**NOT FOR PUBLICATION**

[Doc. No. 38]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SAMUEL R. FEASTER, | |
| Plaintiff, | |
| v. | Civil No. 14-3417 (KMW) |
| A.W. CHESTERTON COMPANY, et al., | **OPINION** |
| Defendants. | |

Michael B. Leh, Esq.,
Locks Law Firm, Philadelphia, PA, for Plaintiff

David S. Blow, Esq.,
Sedgwick LLP,
Newark, NJ for Defendant General Electric Company

WILLIAMS, Magistrate Judge

## I. INTRODUCTION

In this action, Plaintiff Samuel R. Feaster ("Plaintiff" or "Feaster") alleges he contracted mesothelioma while employed at New York Shipbuilding and Drydock Company in Camden, New Jersey, and Sun Ship Yard in Chester, Pennsylvania. *See* Compl., Doc. No. 1-1. Presently, before the Court is the Motion for Summary Judgment filed by Defendant General Electric Company ("GE") [Doc. No. 38]. Plaintiff opposes this Motion. For the reasons set forth

below, the Court will grant Defendant's Motion for Summary
Judgment.

## II.  BACKGROUND

### A.  Facts

The Court accepts the following facts as true.[1]  Plaintiff
alleges injuries as a result of his exposure to asbestos-containing
products while working at New York Shipbuilding and Drydock Company
("NY Ship") in Camden, New Jersey and Sun Ship Yard ("Sun Ship")
in Chester, PA.  GE's Rule 56.1 Statement of Undisputed Material
Facts ("GE 56.1 Statement") ¶ 2; Plaintiff's Counter-Statement of
Material Facts ("Pl.'s Counter-Statement") ¶ 2.  Plaintiff was
employed at NY Ship from 1958 to 1967 as a cleaner and his duties
included sweeping, scaling, sand blasting and general clean up of
debris on vessels at the shipyard.  GE 56.1 Statement ¶ 3.  As a
cleaner, Plaintiff cleaned in close proximity to other trades, and
cleaned up during and after the work of said trades, which exposed
him to asbestos contained in insulation materials.  GE 56.1
Statement ¶¶ 4-5.  Plaintiff identified two possible manufacturers

---

[1] In this District, motions for summary judgment shall include a statement of
material facts not in dispute.  L. Civ. R. 56.1(a).  In opposing a summary
judgment motion, the nonmoving party shall state which material facts are in
dispute and support same with appropriate citations to the record.  *Id.*
"[A]ny material fact not disputed shall be deemed undisputed for purposes of
the summary judgment motion."  *Id.*

2

of the insulation-Johns Manville and Owens Corning.  GE 56.1
Statement ¶ 6.

Moreover, while employed at NY Ship, Plaintiff worked on
several vessels, the USS Kitty Hawk, the NS Savannah, and the USS
Little Rock.  GE 56.1 Statement ¶ 7.  Plaintiff does not believe
that any of his work on the USS Kitty Hawk, nor the work of those
in his vicinity on the USS Kitty Hawk, caused him to be exposed to
asbestos.  GE 56.1 Statement ¶ 10.  With respect to the NS Savannah,
Plaintiff worked in the reactor room and on the decks and believes
he was exposed to asbestos from insulation in the pipes from the
reactor.  GE 56.1 Statement ¶ 11; Plaintiff's Deposition Transcript
("Pl. Tr.") 180:4-18.   Similarly, Plaintiff attributes his
asbestos exposure on the USS Little Rock to cleaning up pipe and
duct insulation in the engine and fire rooms, however, Plaintiff
was not sure of the brand.  GE 56.1 Statement ¶ 13; Pl. Tr. 183:6-
14.

At NY Ship, while performing sandblasting, Plaintiff worked
on ships and on the ground, but mostly on the ground.  Pl. Tr.
101:4-9.  Plaintiff does not know if he was exposed to asbestos by
virtue of his sandblasting duties.  Pl. Tr. 104:8-12.  Plaintiff
was also responsible for sweeping.  Plaintiff performed most of
his sweeping duties on ships; Plaintiff swept off ships too, but
that was only sometimes for a little job.  Pl. Tr. 104:13-21.

Plaintiff swept every day.  Pl. Tr. 105:4-7.  Plaintiff also went
out to sea while employed with NY Ship.  GE 56.1 Statement ¶ 36.

Plaintiff was later employed at Sun Ship in Chester,
Pennsylvania, as a cleaner, rigger trainee and as a rigger first,
second and third class.  GE 56.1 Statement ¶ 17; Pl. Tr. 167:5-8.
Riggers move and connect heavy machinery.  GE 56.1 Statement ¶ 18.
While employed at Sun Ship, Plaintiff worked on several ships and
believes he was exposed to asbestos from helping pipefitters with
valves; machinists with motors; and working with electricians,
machinist and insulator piper-fitters cutting and manipulating
insulation.  GE 56.1 Statement ¶ 19.

With regard to his duties as a cleaner at Sun Ship, Plaintiff
believes he was exposed to asbestos sweeping up in the boiler room
and the main steam pipes.  Pl. Tr. 168:2-22.  Plaintiff described
dusty conditions but attributed same to insulation, electrical
cuttings, tape, wood, and wires.  Pl. Tr. 168:2-169:7.  GE was not
identified as the manufacturer of any of the foregoing items.
Plaintiff also believes he was exposed to asbestos as a cleaner by
the insulators, who cut down insulation, and pipe fitters.  Pl.
Tr. 171:3-14.  Again, Plaintiff did not identify GE as having
manufactured the insulation.

As a rigger trainee, Plaintiff believes he was exposed to
asbestos in the engine and pump rooms helping pipe fitters with

valves and machinist with motors. Pl. Tr. 189:11-17.  When asked
who manufactured the motors he assisted with, Plaintiff testified:
"GE was in on a lot of things.  I'll say GE; familiar name."  Pl.
Tr. 191:3-4.  Plaintiff also attributes his work in the engine
rooms tearing pipes and valves apart to his asbestos exposure.
Pl. Tr. 193:14-194:8.

As a rigger third-class, Plaintiff testified that he was
exposed to asbestos partly due to his work with machinists working
on the main engine, however, did not know who manufactured the
main engine or recall which ship the work was performed.  GE 56.1
Statement ¶ 20.

As a rigger second-class, Plaintiff testified that he was
exposed to asbestos while the pipe fitters or other outside vendors
opened up turbines and cut off the insulation.  Pl Tr. 215:17-25.
Plaintiff could not recall the ship he was on when the turbine was
opened up.  Pl. Tr. 216:20-25.  Moreover, when asked if Plaintiff
could identify the manufacturer of the turbine, Plaintiff
responded: "Just, like I said, GE is a very common name; GE makes
everything."  Pl. Tr. 217:2-6.  As a rigger first-class, Plaintiff
believes he was exposed to asbestos in the engine and boiler rooms.
Pl. Tr. 228:6-13.

Plaintiff independently recalled the name of one ship at Sun
Ship, the Callahan, wherein he testified about work performed on

a turbine; however, he did not know who manufactured the turbine. GE 56.1 Statement ¶ 29; Pl. Tr. 362:25-363:3.

Additionally, Plaintiff indicates he was present in the engine room while pipefitters worked on turbines. Pl. Tr. 368:20-369:2. Moreover, with regard to turbines, Plaintiff identified GE as having done "a lot of it" but Plaintiff also indicates that he could not recall the names of other turbine manufacturers. Pl. Tr. 359:4-8. Moreover, Plaintiff could not identify the name of a single ship with a GE turbine in the engine room. Pl. Tr. 359:9-12. On the occasions where Plaintiff was in the engine room with a GE turbine, the turbines where either being opened up and inspected or taken out and sent to the machine shop. Pl. Tr. 359:17-360:3. Plaintiff had a specific recollection of a turbine being opened and he indicated that there was no insulation surrounding the turbine. Pl. Tr. 359:24-360:25. Plaintiff also recalls being aboard a ship where a GE turbine was being removed but could not recall the name of the ship. 361:2-7. Additionally, Plaintiff identified GE as the manufacturer of steam motors (however, Plaintiff used the terms motor and turbine

interchangeably) and indicated that same were insulated with block and cement--manufacturer unknown.  GE 56.1 Statement ¶ 33.[2]

Plaintiff admits that in three days of testimony, there is no testimony regarding a brittle, crumbly, or flaky insulation, nor any testimony about dusty conditions in the context of GE's turbines or motors at either Sun Ship or NY Ship.  GE 56.1 Statement ¶ 42; Pl.'s Counter-Statement ¶ 42.

**B.   Procedural History**

On or about December 31, 2013, Plaintiff filed this action in the Middlesex County Superior Court.  *See* Owens-Illinois's 56.1 Statement ¶ 1.  On or about May 30, 2014, this action was removed to the United States District Court for the District of New Jersey by Defendants Foster Wheeler and General Electric Company pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446.  *Id.* ¶ 2; Notice of Removal [Doc. No. 1].  Plaintiff passed away on April 6, 2015.  *Id.* ¶ 4.

**III.  STANDARD OF REVIEW**

---

[2] Plaintiff denies this fact stating that Plaintiff described the block and cement insulation as contained in the turbines and motors, however, Plaintiff testified:

    Q. Where was the asbestos located on a steam motor?
    A. Outside casing cover, insulate the outside casing.
    Q. What shape or form did the insulation come in?
    A. Usually form of blocks or whatever, and then they cut them and fit
    them in in pieces. Then they mix up asbestos in a mud and put the mud
    on there. Smooth it all in. Make it, you know, nice. Then they put
    a cloth over it.

Pl. Tr. 371:15-372:2.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 249).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.''" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Finally, all evidence shall be construed, and all reasonable inferences drawn, in the light most favorable to the nonmoving party. *Id.*

**IV. DISCUSSION**

Defendant GE is entitled to summary judgment because maritime law is applicable to Plaintiff's claims regarding GE and, pursuant to maritime law, Plaintiff has failed to provide any evidence that he was exposed to asbestos from a product manufactured or otherwise supplied by GE.

### A. Applicability of Maritime Law

First, the Court must address the applicability of maritime law.   Defendant argues that maritime law applies because Plaintiff's asbestos exposure occurred while onboard naval and non-naval vessels in port or dry docked at the shipyards where he was employed.  For the first time, during oral argument, Plaintiff argued that maritime law does not apply to Plaintiff's claim because he was a shipyard worker.   Plaintiff argues that the court's analysis in *Connor v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455 (E.D. Pa. 2011) is persuasive on this issue because Judge Robreno distinguished the exposure of a land-based shipyard machinist, Tina Willis, from the exposure of those who served in the Navy aboard ships.  In *Connor*, Judge Robreno found that neither the locality nor connection test was met because Willis was principally a land-based shipyard worker.  799 F. Supp. 2d at 467-69.

Subsequent to *Connor*, Judge Robreno has addressed the issue of the applicability of maritime law in numerous opinions and,

accordingly, has succinctly set forth the standard to determine the applicability of same.  In *Deuber v. Asbestos Corp.*, Judge Robreno stated:

> In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in *Conner*) is land-based work.  The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,' "and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'"
> *Locality Test*
> If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters."  If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.
> *Connection Test*
> When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will meet the connection test necessary for the application of maritime law.  But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies.

> In instances where there are distinct periods of different types (e.g., sea-based versus land-based) of exposure, the Court may apply two different laws to the different types of exposure.

No. 2:10-CV-78931, 2011 WL 6415339, at *1 (E.D. Pa. Dec. 2, 2011)(internal citations omitted). Notably, in *Deuber*, the plaintiff was alleging that his asbestos exposure was attributed to his work as a rigger while working with valves for use aboard ships at the Philadelphia Naval Shipyard. *Id.* The court found that maritime law applied because it was clear that the work performed at the shipyard resulting in the alleged exposure was from work done aboard docked ships as opposed to in other areas of the shipyard. *Id.* The court rejected plaintiff's argument that the injury did not occur on navigable waters because the vessels at issue were being constructed at the facility finding that the alleged exposure occurred aboard ships docked at the shipyard, and thus, was sea-based work. *Id.*

Here, the Court finds that there is sufficient evidence in the record establishing that any exposure alleged by Plaintiff with regard to GE occurred primarily from being aboard ships at the shipyard, thus, maritime law applies to his claims regarding GE. In this case, the Court finds that the facts in *Deuber*, rather than the facts set forth regarding the Willis Plaintiff in the *Connor* case, to be similar to the facts in this case. Plaintiff's

11

testimony regarding GE turbines establishes that he encountered the turbines in the engine room aboard various ships. Indeed, even when the turbines were being removed from the ships, they were being removed from the engine room of the vessel. Additionally, Plaintiff was present in the engine room while pipefitters worked on turbines.

Additionally, in terms of Plaintiff's employment at NY Ship, Plaintiff worked on ships daily. One of the Plaintiff's main duties at NY Ship was sweeping and he swept every day. Indeed, the record reflects that Plaintiff performed most of his sweeping duties on the ships and only swept off the ship sometimes for little jobs.

Similarly, at Sun Ship, Plaintiff encountered GE turbines while in the engine room aboard ships. Thus, any alleged exposure resulting from GE turbines would have primarily occurred aboard a ship that had come in for maintenance or repair. Moreover, Plaintiff went out to sea on ships that he worked on while employed at NY Ship and Sun Ship.

Thus, unlike the Willis plaintiff in *Connor* whose exposure was primarily attributed to his land-based work, the record establishes that the Plaintiff here, like the *Deuber* plaintiff, encountered GE turbines in the engine rooms aboard ships. As such, the locality test would be satisfied because at least some portion

of the alleged exposure occurred on a vessel on navigable waters which includes vessels that were docked or dry-docked at the shipyard. *Deuber*, 2011 WL 6415339 at *1. Moreover, as stated in *Deuber*, because the sea-based claims of alleged asbestos exposure meet the locality test, same will "meet the connection test necessary for application of maritime law." *Id.* Consequently, maritime law applies to Plaintiff's claims against GE.

**B. Causation under Maritime Law**

"[U]nder maritime law, to establish causation in an asbestos case, 'a plaintiff must show, for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered.'" *Thomasson v. Air & Liquid Systems Corp.*, No. 13-1034, 2015 WL 1639730, at *3 (D.N.J. April 9, 2015)(citing *Lindstrom v. A-C Prod. Liab. Trust*, 434 F.3d 488, 492 (6th Cir. 2005)). Plaintiff is also required to show that defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Id.* Plaintiff must show more than minimum exposure or that the product was merely present at his or her place of work. *Id.* Plaintiff must show that the product was a substantial factor in causing the injury by demonstrating "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.*

Here, Plaintiff's claims against GE fail because there is no evidence in the record establishing that GE manufactured or distributed the asbestos-containing product to which exposure is alleged. Simply put, the record establishes that Plaintiff attributes his asbestos exposure to the insulation surrounding GE turbines, however, there is no evidence identifying who manufactured the insulation on GE turbines. More importantly, there is no evidence establishing that GE manufactured or distributed same.[3] Similarly, there is no evidence that GE's turbines and/or motors contained asbestos.[4] For these reasons, on this record, there is no available inference that these GE turbines contained asbestos or that the insulation on the turbines were manufactured or supplied by GE. Thus, summary judgment is appropriate.

**C. New Jersey Law**

---

[3] Indeed, GE states that it would not have specified, manufactured, supplied or installed thermal insulation for its turbines. GE 56.1 Statement ¶ 41. Plaintiff simply denies this fact without directing the Court to evidence establishing otherwise. Pl.'s Counter-Statement" ¶ 41. Thus, same is deemed undisputed.

[4] Moreover, Plaintiff admits that in three days of testimony, there is no testimony regarding a brittle, crumbly, or flaky insulation, nor any testimony about dusty conditions in the context of GE's turbines or motors at either Sun Ship or NY Ship. GE 56.1 Statement ¶ 42; Pl.'s Counter-Statement ¶ 42. Thus, giving all reasonable inferences to Plaintiff, there appears to be no evidence that Plaintiff was actually exposed to asbestos in the context of GE's turbines and/or motors.

Here, even if the Court were to find that Plaintiff's claims against GE are governed by New Jersey law, summary judgment would still be appropriate.

New Jersey law, in an asbestos case, requires that the Plaintiff first establish, "in addition to other elements of a product liability action, exposure to friable asbestos manufactured or distributed by the defendant." *Sholtis v. Am. Cyanamid Co.*, 238 N.J. Super. 8, 30 (App. Div. 1989). Additionally, to defeat summary judgment, plaintiff must produce evidence demonstrating that "'reasonable jurors could infer that sometime during [plaintiff's] work histor[y] ... plaintiff [was] exposed to a defendant's friable asbestos frequently and on a regular basis, while [plaintiff was] in close proximity to it[,]' as well as 'competent evidence, usually supplied by expert proof, establish[ing] a nexus between the exposure and plaintiff's condition.'" *Thomasson*, 2015 WL 1639730, at *3. As set forth above, this record does not establish that Plaintiff was exposed to a GE asbestos-containing product and there is no record evidence, and indeed same was admitted by Plaintiff, describing the existence of friable asbestos in the context of a GE turbine and/or motor.

Plaintiff argues that under New Jersey law GE would be liable based on its failure to warn Plaintiff of dangers associated with its product. Moreover, recognizing that the New Jersey Supreme

Court has yet to decide a failure to warn asbestos case, Plaintiff argues that this Court must predict how said court would decide this issue.  It is true that federal courts would look to the New Jersey Supreme Court to decide issues of substantive state law. *Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 148 (3d Cir. 1988).  "In the absence of an authoritative pronouncement by a state's highest court, we may give serious consideration to the opinion of an intermediate appellate court." *Id.*  Thus, pursuant to *Aetna*'s dictates, the Court looks to *Hughes v. A.W. Chesterton Co.*, 435 N.J. Super. 326, 331 (App. Div. 2014), *cert. denied*, 220 N.J. 41 (2014), for an indication of how the New Jersey Supreme Court would decide this failure to warn issue.[5]  In *Hughes*, the court held "in an asbestos failure to warn claim that liability may attach only where a plaintiff identifies an asbestos-containing product manufactured or supplied by defendant." *Shearer v. A.W. Chesterton Co.*, No. 13-5887, 2015 WL 3889366, at *3 (D.N.J. June 24, 2015)(citing *Hughes*, 435 N.J. Super. at 345).  Thus, for the same reasons set forth above, Plaintiff's claims against GE would fail because Plaintiff has not identified an asbestos-containing product manufactured or supplied by GE.

**V. CONCLUSION**

---

[5] Plaintiff criticizes the *Hughes* decision indicating that same was decided wrong but this Court is entitled to give serious consideration to *Hughes*.

Consequently, Defendant GE's Motion for summary judgment is granted.[6]  An accompanying Order will be entered.

Date: December 22, 2015          s/ Karen M. Williams
                                 KAREN M. WILLIAMS
                                 UNITED STATES MAGISTRATE JUDGE

---

[6] Accordingly, the Court need not address Defendant's arguments regarding the government contractor defense.

17